UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

TAMIE HOLLINS, individually and on behalf of all others similarly situated,

        Plaintiff,
v.

PAPARAZZI, LLC,

        Defendant.

CASE NO.: 5:22-cv-393 (LEK/ATB)

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff Tamie Hollins ("Plaintiff"), individually and on behalf of all others similarly situated, alleges the following against Defendant Paparazzi, LLC ("Paparazzi" or "Defendant") on information and belief, except that Plaintiff's allegations as to her own actions are based on personal knowledge as to matters related to and known to her. As to all other matters, Plaintiff bases her allegations on information and belief and through investigation of her counsel. Plaintiff believes substantial evidentiary support exists for the allegations below.

**INTRODUCTION**

1. Defendant Paparazzi, LLC is a multi-level marketing business that sells jewelry and other accessories wholesale in bulk to consultants.

2. Despite earlier representations and express warranties stating that Paparazzi's products are "lead-free and nickel-free," Paparazzi designed, sourced and sold jewelry that allegedly contained detectable levels of lead and nickel, among other heavy metals (the "Products").[1]

---

[1] *Paparazzi Accessories Quietly Removes Lead and Nickel-Free Claim* (Feb. 16, 2022), https://truthinadvertising.org/articles/paparazzi-accessories-lead-free-and-nickel-free-jewelry/ (last visited Apr. 22, 2022).

3. Between November 20, 2021, and January 9, 2022, Paparazzi removed the "lead-free and nickel-free" representation from their website.[2]

4. Nickel allergy affects approximately 10% of the United States population, often causing itchy, inflamed rashes, hives, and sometimes headaches, vomiting, and fatigue.[3]

5. Lead is used in jewelry to make the product heavier, more stable, brighten the paint, or soften the plastic. However, lead is a toxic metal that that can lead to health problems such as learning disabilities, anemia, and organ failure.

6. Unbeknownst to Plaintiff and Members of the proposed Classes, and contrary to the representations on the Defendant's website,[4] the Products contain lead and nickel, which, if disclosed to Plaintiff and Members of the proposed Classes prior to purchase, would have caused Plaintiff and Members of the proposed Classes not to purchase or consume the Products.

7. As a result, the Products' labeling is deceptive and misleading. Plaintiff and the Members of the proposed Classes, as defined below, thus bring related claims under both the common law and relevant state and federal statutes.

## THE PARTIES

8. Plaintiff Tamie Hollins is a citizen of New York and resides in Newburgh, NY. At various points throughout 2021, Plaintiff Hollins purchased Paparazzi Products for personal purposes. Plaintiff Hollins purchased Paparazzi Products because they were advertised as being

---

[2] *Id.*

[3] *Nickel Allergy*, Cleveland Clinic (July 4, 2018), https://my.clevelandclinic.org/health/diseases/17842-nickel-allergy (last visited Apr. 22, 2022).

[4] *See About Us*, Paparazzi (2022), https://web.archive.org/web/20220109184940/https://paparazziaccessories.com/about/ (last visited Apr. 22, 2022); *see also* Awnya B., *Paparazzi jewelry IS Nickel and Lead Free* (Dec. 27, 2022), https://jewelryblingthing.com/blogs/news/paparazzi-jewelry-is-nickel-and-lead-free (last visited Apr. 22, 2022).

free of heavy metals and nickel-free. Plaintiff Hollins suffered economic damages related to the purchase of the Paparazzi Products.

9. Defendant Paparazzi, LLC is a corporation headquartered in Utah with Paparazzi's principal place of business located at 4771 Desert Color Pkwy., St. George, UT 84790.

## JURISDICTION AND VENUE

10. This Court has personal jurisdiction over Defendant Paparazzi because it conducts substantial business in this District.

11. This Court has original subject-matter jurisdiction over this proposed class action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), which provides for the original jurisdiction of the federal district courts over "any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and [that] is a class action in which . . . any member of a class of Plaintiff is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A). Because the proposed Class that Plaintiff seeks to represent includes residents from throughout the United States, the Class includes citizens from states other than the state of which Paparazzi is a citizen, *i.e.*, Utah. Further, Plaintiff alleges the matter in controversy exceeds $5,000,000.00 in the aggregate, exclusive of interest and costs. Finally, "the number of members of all proposed plaintiff classes in the aggregate" is greater than 100. *See* 28 U.S.C. § 1332(d)(5)(B).

12. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because much of the conduct at issue occurred in this District.

3

**COMMON FACTUAL ALLEGATIONS**

I.      **Defendant Marketed And Sold Its Jewelry As "Lead-Free And Nickel-Free"**

13.      Paparazzi is a company that designs, sources, and sells jewelry in the United States via their multi-level marketing distribution strategy. Paparazzi's Products are produced in China.

14.      Paparazzi holds itself out to the public as a distributor of safe, fashion-forward, and affordable jewelry. As part of its previous marketing and sales, Paparazzi made representations and express warranties about the quality of its jewelry as "lead-free and nickel-free."

15.      Paparazzi promoted the Products as "lead-free and nickel-free" jewelry on their website as recently as November 9, 2021.[5]



16.      Since November 09, 2021, Paparazzi removed the claim from its website. Pictured below is the site on January 09, 2022.[6]

---

[5] *About Us*, Paparazzi (2021), https://web.archive.org/web/20211006014220/https://paparazziaccessories.com/about/ (last visited Apr. 22, 2022).

[6] *See About Us*, Paparazzi (2022), *supra* note 4.

4



**II.     Paparazzi Products Actually Contain Heavy Metals And Nickel**

17.     Unbeknownst to Plaintiff and Members of the proposed Classes, and contrary to the representations on the Defendant's website, the Products contain toxic heavy metals such as antimony, arsenic, cadmium, and lead, as well as nickel,[7] which, if disclosed to Plaintiff and Members of the proposed Classes prior to purchase, would have caused Plaintiff and Members of the proposed Classes not to purchase or consume the Products.[8]

18.     Lead is a carcinogen and developmental toxin known to cause health problems to consumers.

---

[7] *See* Murial Bezanson, *Paparazzi Jewelry Tests Positive for Lead and Nickel* (Jan. 4, 2022), https://medium.com/@murialbezanson/paparazzi-jewelry-tests-positive-for-lead-and-nickel-877c2254a47d (last accessed Apr. 22, 2022); Tamara Rubin, *Paparazzi Accessories Child's Ring* (Feb. 20, 2022), https://tamararubin.com/2022/02/paparazzi-accessories-childs-ring-pink-white-flower-with-center-gem-252800-ppm-lead-98200-ppm-cadmium-4565-ppm-antimony-40500-ppm-nickel-too/ (last accessed Apr. 22, 2022).

[8] *Paparazzi Accessories Quietly Removes Lead and Nickel-Free Claim*, *supra* note 1.

19. For centuries, exposure to lead has been known to pose health hazards. According to the Agency for Toxic Substances and Disease Registry 2007, certain levels of exposure can result in delirium, seizures, stupor, coma, or even death.

20. A substantial body of recent epidemiologic and toxicologic research demonstrates that multiple health effects can occur at low to moderate blood lead levels previously without recognized harm. Health effects of chronic low-level exposure in adults include cognitive decline, hypertension and other cardiovascular effects, decrements in renal function, and adverse reproductive outcome.

21. Exposure to heavy metals causes permanent decreases in IQ, diminished future economic productivity, and increased risk of future criminal and antisocial behavior in children. Toxic heavy metals endanger infant neurological development and long-term brain function.[9]

22. Some studies have shown that lead can be absorbed through the skin.[10]

23. The Agency for Toxic Substances and Disease Registry states that there may be no threshold for lead with regards to developmental impact on children. "In other words, there are no safe limits for [lead]."[11]

24. Moreover, nickel is known allergen that can cause reactions in wearers such as itchy rashes and blisters at the site of contact with skin. Reactions can begin within hours or days of the exposure to nickel, and may last as long as two to four weeks.[12]

---

[9] Muwaffak Al Osman, et al., *Exposure routes and health effects of heavy metals on children*, Biometals 32, 563–73 (2019), https://pubmed.ncbi.nlm.nih.gov/30941546/#:~:text=The%20implications%20of%20heavy%20metals,problems%2C%20cancer%20and%20cardiovascular%20diseases (last accessed Apr. 22, 2022).

[10] *See Lead*, CDC (Dec. 12, 2021), https://www.cdc.gov/niosh/topics/lead/exposure.html (last accessed Apr. 22, 2022).

[11] G. Schwalfenberg, et al., "Heavy metal contamination of prenatal vitamins," Toxicology Reports 5 at 392 (2018).

[12] *Nickel allergy*, Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/nickel-allergy/symptoms-causes/syc-20351529, (last accessed Apr. 22, 2022).

25. Studies have shown that roughly 12 to 17% of women and 1 to 3% of men are allergic to nickel.[13]

26. In a statement attributed to Paparazzi's founders and corporate offices dated December 22, 2021, Paparazzi admitted its jewelry "may contain trace amounts of lead and nickel".[14]

## CLASS ACTION ALLEGATIONS

27. Additionally, pursuant to Rule 23(a) and (b)(3), Plaintiff brings this action on behalf of a proposed Classes defined as follows:

> **The Nationwide Class.** All persons who purchased Paparazzi Products in the United States within the Relevant Time Period.

28. Plaintiff also seeks to represent a Subclass of all Class Members who purchased the Products in New York (the "Subclass" or "New York Subclass"):

> **The New York Subclass.** All persons residing in New York who purchased Paparazzi Products within the Relevant Time Period.

29. Excluded from the Nationwide Class and New York Subclass are: (a) Defendant, Defendant's board members, executive-level officers, and attorneys, and immediately family members of any of the foregoing persons; (b) governmental entities; (c) the Court, the Court's immediate family, and the Court staff; and (d) any person that timely and properly excludes himself or herself from the Class in accordance with Court-approved procedures.

---

[13] Stefanos F. Haddad, *Exploring the Incidence, Implications, and Relevance of Metal Allergy to Orthopaedic Surgeons*, 3(4) J. Am. Acad. of Orthopaedic Surgeons Glob. Rsch. & Revs. (Apr. 5, 2019), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC6510463/ (last accessed Apr. 22, 2022); *What do you need to know about nickel allergy?*, Nickel Institute (2022), https://nickelinstitute.org/en/science/what-do-you-need-to-know-about-nickel-allergy/ (last accessed Apr. 22, 2022).
[14] *Paparazzi jewelry IS Nickel and Lead Free*, *supra* note 4.

7

30. Plaintiff reserves the right to alter the Class definitions as she deems necessary at any time to the full extent that the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the Northern District of New York, and applicable precedent allow.

31. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of the claims on a class-wide basis using the same evidence as individual Class Members would use to prove those elements in individual actions alleging the same claims.

32. <u>Numerosity – Rule 23(a)(1):</u> The size of the Nationwide Class and the New York Subclass are so large that joinder of all Class Members is impracticable. Due to the nature of Defendant's business and the size of the recalls, Plaintiff believes there are hundreds or thousands of Class Members geographically dispersed throughout the United States and hundreds or thousands of Class Members in each state.

33. <u>Existence and Predominance of Common Questions of Law and Fact – Rule 23(a)(2), (b)(3):</u> There are questions of law and fact common to the Nationwide Class and the New York Subclass. These questions predominate over any questions affecting only individual Class Members. Common legal and factual questions include but are not limited to:

    a. whether Defendant sold Products that had detectable levels of nickel and lead;

    b. whether Defendant advertised, represented, or held itself out as producing or manufacturing Products that were safe to wear;

    c. whether Defendant expressly warranted the Products;

    d. whether Defendant purported to disclaim any express warranty;

    e. whether Defendant purported to disclaim any implied warranty;

    f. whether any limitation on warranty fails to meet its essential purpose;

    g. whether Defendant intended for Plaintiff, the Class Members, and others to

purchase the Products;

h. whether Defendant intended or foresaw that Plaintiff, the Class Members, and others would wear the Products;

i. whether and in what manner Defendant was negligent in manufacturing or processing the Products;

j. whether Defendant's negligence proximately caused loss, injury, or damages to the Class Members;

k. whether the Class Members suffered direct losses or damages;

l. whether the Class Members suffered indirect losses or damages;

m. whether the Class Members are entitled to actual or other forms of damages and other monetary relief; and

n. whether the Class Members are entitled to equitable relief, including but not limited to injunctive relief and equitable restitution.

34. Defendant engaged in a common course of conduct in contravention of the laws Plaintiff seeks to enforce individually and on behalf of the Class Members. Similar or identical violations of law, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action. Moreover, the common questions will yield common answers that will substantially advance the resolution of the case.

35. <u>Typicality – Rule 23(a)(3):</u> Plaintiff's claims are typical of the claims of the Members of the Nationwide Class and the New York Subclass because Defendant injured all Class Members through the uniform misconduct described herein; and Plaintiff seeks the same relief as the Class Members. Furthermore, there are no defenses available to Defendant that are unique to Plaintiff.

36. <u>Adequacy of Representation – Rule 23(a)(4):</u> Plaintiff is a fair and adequate representative of the Nationwide Class and the New York Subclass because Plaintiff's interests do

9

not conflict with the Class Members' interests. Plaintiff will prosecute this action vigorously and is highly motivated to seek redress against Defendant. Furthermore, Plaintiff has selected competent counsel who are experienced in class action and other complex litigation. Plaintiff and her counsel are committed to prosecuting this action vigorously on behalf of the Class and have the resources to do so.

37. <u>Superiority – Rule 23(b)(3)</u>: The class action mechanism is superior to other available means for the fair and efficient adjudication of this controversy for reasons including but not limited to the following:

    a. The damages individual Class Members suffered are small compared to the burden and expense of individual prosecution of the complex and extensive litigation needed to address Defendant's conduct.

    b. Further, it would be virtually impossible for the Class Members individually to redress effectively the wrongs done to them. Even if Class Members themselves could afford such individual litigation, the court system could not. Individualized litigation would unnecessarily increase the delay and expense to all parties and to the court system and presents a potential for inconsistent or contradictory rulings and judgments. By contrast, the class action device presents far fewer management difficulties, allows the hearing of claims which might otherwise go unaddressed because of the relative expense of bringing individual lawsuits, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

    c. The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications, which would establish

          incompatible standards of conduct for Defendant.

    d.    The prosecution of separate actions by individual Class Members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class Members not parties to the adjudications or that would substantively impair or impede their ability to protect their interests.

38.    <u>Notice</u>: Plaintiff and her counsel anticipate that notice to the proposed Class will be effectuated through recognized, Court-approved notice dissemination methods, which may include United States mail, electronic mail, Internet postings, and/or published notice.

## CAUSES OF ACTION

## COUNT 1

### NEGLIGENCE
### (On behalf of the New York Subclass)

39.    Plaintiff incorporates by reference and realleges each allegation set forth above and further alleges as follows:

40.    Plaintiff brings this claim for negligence against Defendant on behalf of the New York Subclass.

41.    Plaintiff and the Class were within the foreseeable zone of risk of injury or other losses in the event Defendant's Products were defective or contaminated or otherwise negligently formulated, manufactured, or produced, which risks Defendant knew or should have known.

42.    Defendant owed Plaintiff and the Class Members a duty to offer only safe, non-contaminated products to wear by Plaintiff and the Class Members.

43.    Through its failure to exercise due care, Defendant breached this duty by producing, processing, manufacturing, and offering for sale the Products in a defective condition that was

11

dangerous to Plaintiff and the Class Members.

44. Additionally, Defendant breached its duty of care to Plaintiff and the Class Members by failing to use sufficient quality control, perform adequate testing, proper manufacturing, production, or processing, and by failing to take sufficient measures to prevent the Products from being offered for sale or sold.

45. Defendant knew, or in the exercise of reasonable care should have known, that the Products presented an unacceptable risk of harm to the Plaintiff and the Class Members and would result in damage that was foreseeable and reasonably avoidable.

46. As a direct and proximate result of Defendant's negligence, Plaintiff and the Class Members have suffered loss and damages.

47. Therefore, Plaintiff pray for relief as set forth below.

## COUNT 2

### STRICT PRODUCT LIABILITY
### (On behalf of the New York Subclass)

48. Plaintiff incorporates by reference and realleges each allegation set forth above and further alleges as follows:

49. Plaintiff brings this claim for strict product liability design defect against Defendant on behalf of the New York Subclass.

50. Defendant is the producer, manufacturer, and/or distributor of the Products.

51. Defendant's Products left Defendant's possession in an unreasonably dangerous condition.

52. Defendant's Products reached Plaintiff and the Class Members without substantial change in condition, as expected.

53. The Products, which, among other potential defects, contained toxic levels of lead

and nickel, were in an unreasonably dangerous condition because (a) they failed to perform as safely as an ordinary consumer would expect when used as intended or when used in a manner reasonably foreseeable to Defendant; and (b) because the foreseeable risks of using the Products outweighed the benefits of their use.

54. Plaintiff and the Class Members used the products as intended and in a manner reasonably foreseeable to Defendant.

55. As the direct and foreseeable result of the defective condition of the Products as produced, manufactured, and/or distributed by Defendant, Plaintiff and the Class Members suffered damages.

56. Therefore, Plaintiff pray for relief as set forth below.

## COUNT 3

### UNJUST ENRICHMENT
### (On behalf of the New York Subclass)

57. Plaintiff incorporates by reference and realleges each allegation set forth above and further alleges as follows:

58. Plaintiff brings this claim for unjust enrichment against Defendant on behalf of the New York Subclass.

59. As a direct, proximate, and foreseeable result of Defendant's acts and otherwise wrongful conduct, Plaintiff and the Class Members conferred a benefit on Defendant and consequently suffered damages. Defendant profited and benefited from the sale of the Products, even as the Products caused Plaintiff and the Class Members to incur damages.

60. Defendant voluntarily accepted and retained these profits and benefits, derived from Plaintiff and the Class Members, with full knowledge and awareness that as a result of Defendant's wrongdoing, consumers including Plaintiff and the Class Members were not receiving

13

Products of the quality, nature, fitness, or value that had been represented by Defendant or that reasonable consumers expected.

61. Defendant continues to possess monies paid by Plaintiff and the Class Members to which Defendant is not entitled.

62. Under the circumstances it would be inequitable for Defendant to retain the benefits conferred upon it and Defendant's retention of these benefits violates fundamental principles of justice, equity, and good conscience.

63. Plaintiff and the Class Members hereby seek the disgorgement and restitution of Defendant's wrongful profits, revenue, and benefits, to the extent, and in the amount, deemed appropriate by the Court, and such other relief as the Court deems just and proper to remedy Defendant's unjust enrichment.

64. Therefore, Plaintiff prays for relief as set forth below.

## COUNT 4

**VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW**
**N.Y. Gen. Bus. Law §§ 349,** *et seq.*
**(On behalf of the New York Subclass)**

65. Plaintiff, individually and on behalf of the New York Subclass, repeats and re-alleges all previously alleged paragraphs, as if fully alleged herein.

66. Defendant is a "person," as defined by N.Y. Stat. Ann. § 56:8-1(d).

67. Defendant engaged in deceptive acts or practices in the conduct of their business, trade, and commerce or furnishing of services, in violation of N.Y. Gen. Bus. Law § 349, as described herein.

68. Defendant's representations and omissions were material because they were likely to deceive reasonable consumers.

69. Defendant acted intentionally, knowingly, and maliciously to violate New York's General Business Law, and recklessly disregarded the Plaintiff and New York Subclass Members' rights.

70. As a direct and proximate result of Defendant's deceptive acts and practices, the Plaintiff and New York Subclass Members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the Paparazzi's Products.

71. Defendant's deceptive and unlawful acts and practices complained of herein affected the public interest and consumers at large, including the thousands of New Yorkers who purchased and/or used Paparazzi Products.

72. The above deceptive and unlawful practices and acts by Defendant caused substantial injury to the Plaintiff and New York Subclass Members that they could not reasonably avoid.

73. Plaintiff and the New York Subclass Members seek all monetary and non-monetary relief allowed by law, including actual damages or statutory damages of $50 (whichever is greater), treble damages, injunctive relief, and attorney's fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Members of the Nationwide Class and the New York Subclass, respectfully requests the Court to enter an Order:

A. certifying the proposed Class under Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3), as set forth above;

B. declaring that Defendant is financially responsible for notifying the Class Members of the pendency of this suit;

15

C. declaring that Defendant has committed the violations of law alleged herein;

D. awarding monetary damages, including but not limited to any compensatory, incidental, or consequential damages in an amount that the Court or jury will determine, in accordance with applicable law;

E. providing for any and all equitable monetary relief the Court deems appropriate;

F. awarding punitive or exemplary damages in accordance with proof and in an amount consistent with applicable precedent;

G. awarding Plaintiff her reasonable costs and expenses of suit, including attorneys' fees;

H. awarding pre- and post-judgment interest to the extent the law allows; and

I. providing such further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of all issues in this action so triable of right.

Dated: April 27, 2022　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　*/s/ Gary E. Mason*
　　　　　　　　　　　　　　　　　　　　Gary E. Mason (NDNY Bar No. 105875)
　　　　　　　　　　　　　　　　　　　　Danielle L. Perry*
　　　　　　　　　　　　　　　　　　　　**MASON LLP**
　　　　　　　　　　　　　　　　　　　　5101 Wisconsin Avenue NW, Suite 305
　　　　　　　　　　　　　　　　　　　　Washington, D.C. 20016
　　　　　　　　　　　　　　　　　　　　Telephone: (202) 429-2290
　　　　　　　　　　　　　　　　　　　　Facsimile: (202) 429-2294
　　　　　　　　　　　　　　　　　　　　gmason@masonllp.com
　　　　　　　　　　　　　　　　　　　　dperry@masonllp.com

Jonathan Shub
Kevin Laukaitis
**SHUB LAW FIRM LLC**
134 Kings Highway E., 2nd Floor
Haddonfield, NJ 08033
Telephone: (856) 772-7200
Facsimile: (856) 210-9088
klaukaitis@shublawyers.com
jshub@shublawyers.com

*pro hac vice to be filed*

*Attorneys for Plaintiff and the Putative Classes*